THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Jared L, <br><br> Plaintiff, <br> v. <br><br> Frank Bisignano <br> Social Security Commissioner, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR REVIEW OF SOCIAL SECURITY AGENCY ACTION <br><br> Case No. 2:25-cv-00092-DBP <br><br> Chief Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff's Motion for Review of Social Security Agency Action.[1] Plaintiff Jared L[2] raises two issues on appeal. First, whether the Administrative Law Judge (ALJ) erred by failing to identify all his severe impairments and properly include those impairments in the residual functional capacity (RFC) assessment. And second, whether the ALJ erred by disregarding the medical opinion evidence from Dr. Shelton, Plaintiff's treating physician. After reviewing the parties' memoranda, the case record, and relevant law, the court concludes that the Commissioner's decision is based on correct legal standards and is supported by substantial evidence. Accordingly, as explained below, the court AFFIRMS the decision of the Commissioner and DENIES Plaintiff's Motion for Review of Social Security Agency Action.

## BACKGROUND

Mr. L (Plaintiff) applied for disability insurance benefits on October 24, 2023, alleging his disability began on October 24, 2023. The claim was initially denied on January 9, 2024, and

---

[1] ECF No. 9. The parties in this matter consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and DUCivR 72-3. ECF No. 3.

[2] Due to security and privacy concerns, the court abbreviates Plaintiff's last name.

upon reconsideration on May 23, 2024. Plaintiff then requested a hearing before an ALJ, which was held on November 14, 2024, in Salt Lake City, Utah, before ALJ Gerald R. Bruce. After the hearing, the ALJ conducted the required five-step sequential evaluation process for disability claims.[3] At step two, the ALJ found that Plaintiff has the following severe impairments: hypoxia and mild obstructive sleep apnea; obesity; bipolar disorder; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); and attention-deficit/hyperactivity disorder (ADHD).[4] At step three, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment.[5]

After careful consideration of the entire record, the ALJ determined the Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform "light work" as set forth in 20 CFR 404.1567(b) with the following limitations:

> He can frequently climb ramps and stairs; he can occasionally climb ladders and scaffolds; he can frequently stoop, kneel, crouch, and crawl; he can occasionally be exposed to pulmonary irritants; due to fatigue, he is limited to simple work; he needs ready access to a restroom at the workplace during normal breaks; he can perform simple, goal-oriented but not assembly line paced work; he can

---

[3] The Tenth Circuit described the five-step evaluation process as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent him from performing his past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether he possesses the sufficient residual functional capability to perform other work in the national economy.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citation modified).

[4] AR 19. The Administrative Record before the court is designated AR throughout this decision.

[5] *See* 20 C.F.R. part 404, Subpart P, Appendix I.

occasionally interact with co-workers, supervisors, and the general public; and he can adapt to routine changes at the workplace.[6]

At step four, the ALJ found that Plaintiff cannot perform his past relevant work as a Computer Aided Design Technician. Finally, at step five, the ALJ found Plaintiff capable of performing other work existing in significant numbers in the national economy.[7] Plaintiff was therefore not disabled under the Social Security Act.

## LEGAL STANDARD

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. Judicial review "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."[8] "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is ground for reversal."[9]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[10] The threshold for evidentiary sufficiency under the substantial evidence standard is "not high."[11] Substantial evidence is "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[6] AR 22.

[7] These jobs included garment sorter, routing clerk, and price marker. AR 30.

[8] *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quotation and citation omitted).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504, 2019 U.S. LEXIS 2480 (2019).

[11] *Id.* at 1154.

[12] *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)). *See also Biestek* 139 S. Ct. at 1154.

from being supported by substantial evidence."[13] Under this standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.[14]

## ANALYSIS

On appeal, Plaintiff argues the ALJ erred in evaluating his severe impairments and the ALJ erred in evaluating the medical opinions of his treating physician. Neither position is persuasive.

### I.  The ALJ's assessment of the Claimant's RFC

At step three of the evaluation process, the ALJ considered the record to determine Plaintiff's RFC. After careful consideration of the record, the ALJ found that Plaintiff is capable of light work. Based on this RFC, at step five, the ALJ determined that Plaintiff could perform other work existing in significant numbers in the national economy. Plaintiff contends that, because the ALJ failed to properly include and assess all of Plaintiff's severe impairments, Plaintiff's RFC was improperly decided. The court disagrees. Plaintiff's impairments were assessed using the proper procedure, and the ALJ's decision is supported by substantial evidence. Each of the Plaintiff's claimed impairments that were allegedly improperly addressed are considered herein.

#### IgM deficiency

Plaintiff contends that the ALJ failed to consider his diagnosis of IgM deficiency.[15] While IgM deficiency is not explicitly mentioned in the ALJ's Decision, this does not make the ALJ's RFC assessment improper. To establish disability, it is insufficient to show only a

---

[13] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

[14] *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[15] IgM deficiency is an immunodeficiency that increases the risk of recurrent infections. It is characterized by low levels of the antibody immunoglobulin, while other antibodies remain normal.

diagnosis.[16] Instead, a claimant must show that his "impairment significantly limits his ability to engage in substantial gainful activity."[17] Contrary to Plaintiff's arguments regarding the severity of his IgM diagnosis, treatment notes provide that Plaintiff's IgM levels varied where sometimes they were low and then normalized.[18] Plaintiff alleges two impairments came from his low IgM diagnosis—shingles and fatigue. Neither condition, however, was proven to be linked to IgM deficiency. The ALJ also addressed both conditions noting that Plaintiff's shingles is under control with medication.[19] The ALJ also addressed Plaintiff's reports of fatigue limiting him to work with light exertional demands, with "only occasional exposure to pulmonary irritants and simple work."[20] Because Plaintiff failed to provide evidence in the record that link his alleged impairments to his IgM deficiency, and the ALJ included additional restrictions based solely on Plaintiff's complaints of fatigue, the ALJ did not err in failing to consider Plaintiff's IgM deficiency.

        Incontinence Issues

Plaintiff argues that, while the ALJ acknowledges Plaintiff's incontinence issues, the ALJ failed to properly account for his non-severe impairments involving incontinence. Plaintiff claims that, due to his incontinence, he has to use the bathroom as often as every twenty to thirty minutes, and that, in the case of an accident, this could take an additional thirty minutes.[21] As an accommodation for Plaintiff's incontinence, the ALJ included in the RFC that "claimant requires

---

[16] *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007) (noting that Tenth Circuit case law makes it clear that a diagnosis of a condition does not establish disability).

[17] *Id.* (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)).

[18] AR 548, 622.

[19] AR 615, 617.

[20] AR 25.

[21] Plaintiff's Opening Brief at 15, ECF No. 9.

ready access to a restroom at the workplace during normal breaks."[22] Based on Plaintiff's subjective statements,[23] this accommodation would allegedly not address Plaintiff's incontinence.[24] However, the ALJ provides evidence in the record to disregard these subjective statements in deciding Plaintiff's RFC.

To justify his decision, the ALJ points to the state agency medical consultants who deemed Plaintiff's incontinence as a non-severe impairment.[25] The ALJ also acknowledges that the medical records showed Plaintiff was diagnosed with irritable bowel syndrome and notes that Plaintiff's incontinence has been deemed stable, with no significant diagnostic workup being conducted on this issue for several years.[26] Finally, the ALJ considered the fact that Plaintiff could work with this impairment for several years as evidence of its non-severity.[27] Plaintiff rightly points out that "'stable' is not synonymous with an impairment not being severe, it just means it is not changing."[28] Plaintiff claims to have been given accommodations at his previous work, which allowed him to be employed for so long.[29] Yet even with these accommodations, he was still let go.[30] Even if the court accepts Plaintiff's arguments, they do not refute the state agency medical consultants finding that this impairment is non-severe and not reflective of the

---

[22] AR 25, 28.

[23] AR 53–54.

[24] *See* AR 63.

[25] AR 20.

[26] AR 24–25, 504.

[27] AR 25. *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2004).

[28] Plaintiff's Opening Brief at 11–12.

[29] AR 53, 431. *See Cowan*, 552 F.3d at 1191 (the plaintiff in *Cowan* does not challenge the ALJ's assertion that the plaintiff "previously worked with these impairments, which suggests these conditions would not currently prevent work." This played an important role in the court's determination that "the ALJ affirmatively linked her credibility determination to substantial evidence in the record." This is distinct from our case as Mr. Lewis does claim that without accommodations, he would not have been able to work with his impairment. Thus, had this been the only evidence used by the ALJ, he may not have satisfied his evidentiary burden).

[30] AR 53, 431.

accommodations Plaintiff requests.[31] This constitutes "more than a mere scintilla" of evidence, thereby satisfying the ALJ's evidentiary burden to disregard Plaintiff's subjective statements about his incontinence.[32] Having properly disregarded Plaintiff's subjective statements, the ALJ's decision to limit bathroom access to "normal breaks" is supported by the record.

      Intermittent Hypoxia[33]

In addressing the Plaintiff's hypoxia, the ALJ labeled it a severe impairment and "limited the claimant to work with light exertional demands, only occasional exposure to pulmonary irritants, and simple work."[34] Plaintiff claims the RFC does not account for his intermittent hypoxia because there is no evidence that hypoxia is linked to pulmonary irritants.[35] Plaintiff asserts the real cause of hypoxia is exertion and that the current RFC requires too much exertion, causing Plaintiff's hypoxia to flare.[36] Plaintiff, however, fails to point to any evidence linking his hypoxia to exertion, which gives the ALJ sufficient reason not to include these claims in the RFC.[37]

Furthermore, the ALJ cites to evidence showing that Plaintiff can perform light exertional demands and simple work.[38] The ALJ did address concerns with fatigue in formulating the RFC, albeit not to the extent Plaintiff would have hoped. Plaintiff's disagreement with the extent of the

---

[31] AR 68–69, 76–77.

[32] *See* 20 C.F.R. § 404.1513a(b)(1) ("State agency medical… consultants are highly qualified and experts in Social Security disability evaluation").

[33] Intermittent hypoxia is a condition of varying levels of oxygen with repeated episodes of low oxygen levels interspersed with normal or high oxygen levels.

[34] AR 25.

[35] Plaintiff's Opening Brief at 13.

[36] *Id.*

[37] *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (plaintiff failed to show that the ALJ had committed an error because they did not "discuss any evidence that would support the inclusion of any limitations").

[38] AR 25 ("The exams of record, which demonstrate that the claimant maintains full 5/5 moto strength, symmetric 2+ reflexes, intact sensory function, and a normal gait, do not support any greater exertional or postural restriction").

ALJ's fatigue analysis is an invitation for the court to reweigh the weight of the evidence regarding his fatigue which is improper. The ALJ appropriately weighed Plaintiff's fatigue and properly considered Plaintiff's hypoxia, relying on evidence in the record in determining Plaintiff's RFC and limiting him to light exertional demands and simple work.

## II. The ALJ's assessment of Dr. Shelton's medical opinions

As is often the case in social security appeals, the court is presented with the "not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."[39] The court finds the ALJ was justified here in finding the three opinion statements from Plaintiff's primary care doctor, Dr. Marie Shelton, were unpersuasive.[40] In assessing the persuasiveness of a medical opinion, the ALJ considers five factors: supportability, consistency, relationship with the claimant, specialization, and other relevant factors.[41] The most important factors are supportability and consistency.[42] These are the only two factors that must be explained by the ALJ when assessing a medical opinion's persuasiveness.[43] The ALJ had sufficient evidence to support his decision and adequately explained why he determined that Dr. Shelton's medical opinions were unsupported and inconsistent.

To determine supportability, the ALJ must assess "the objective medical evidence and supporting explanations" for the opinion.[44] In explaining why Dr. Shelton's opinion was unsupported, the ALJ found, "none of Dr. Shelton's notes include detailed or relevant exam findings or observations.… [T]he disabling degree of symptoms and limitations… are not

---

[39] *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).

[40] AR 28.

[41] 20 C.F.R. § 404.1520c(c).

[42] *Id.* § 404.1520c(b).

[43] *Id.*

[44] *Id.* § 404.1520c(c)(1).

corroborated anywhere in the medical record."[45] While some of Dr. Shelton's claims arguably have evidentiary support, such as the reports of urinary incontinence,[46] renal cysts,[47] and urethral reconstruction,[48] to support her claims about Plaintiff's bathroom needs,[49] Dr. Shelton does not point to this evidence, nor does she explain why this evidence would substantiate her claims. Because Dr. Shelton does not provide any supporting explanation for why a given piece of evidence supports Plaintiff's alleged impairments, or point to any evidence supporting her medical opinions, it was proper for the ALJ to conclude that her claims are unpersuasive.

In assessing the consistency of a medical provider's statements, the ALJ must compare those statements to "evidence from other medical sources and nonmedical sources in the claim."[50] The ALJ performed this analysis noting Dr. Shelton's statements—particularly her statements about the Plaintiff's mental impairments—were not consistent with the medical record. Regarding Dr. Shelton's opinion, the ALJ found that "the disabling degree of symptoms and limitations described in terms of the claimant's GI symptoms, memory/attention problems, and panic attacks are not corroborated anywhere in the medical record and are inconsistent with essentially benign treating source and consultative exams."[51] Notably, the point at issue is the Plaintiff's physical impairments, not his mental impairments. Even so, the inconsistencies in the record undermine Dr. Shelton's overall assessment and qualify as evidence supporting the ALJ's decision. In essence, Dr. Shelton often simply repeated Plaintiff's subjective statements.

---

[45] AR 28.

[46] AR 434.

[47] AR 657, 675.

[48] AR 333.

[49] AR 416.

[50] 20 C.F.R. § 404.1520c(c)(2).

[51] AR 28.

Accordingly, it was proper for the ALJ to conclude that Dr. Shelton's opinion was improperly influenced by Plaintiff's subjective statements and not by the objective medical evidence.

## CONCLUSION and ORDER

For the foregoing reasons, Plaintiff's Motion for Review of Social Security Agency Action is DENIED[52] and the Commissioner's decision is AFFIRMED. The Clerk of Court is directed to close this case.

DATED this 21 November 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[52] _____